**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **QUENTIN BULLARD,** | * |
| **Plaintiff** | * |
| v. | *   Civil No. PJM 06-1793 |
| **UNITED STATES,** | * |
| **Defendant** | * |

**MEMORANDUM OPINION**

Quentin Bullard, pro se, has sued the United States[1] seeking a permanent injunction against the Internal Revenue Service for a levy on his wages to collect penalties on unpaid trust fund taxes and individual income taxes. He also seeks a tax refund for monies already levied upon or consequential monetary damages. The United States has filed a Motion to Dismiss the claims for a permanent injunction and monetary damages.[2] The Court heard oral argument and took the matter under advisement. For the following reasons, the Court **GRANTS** the Government's Motion.

**I.**

This case arises out of the failure of AMC Security Corporation to pay federal employment taxes for the third and fourth quarters of 1996. According to the United States, Bullard, at all relevant times was a "person" required to collect, truthfully account for and pay over these taxes

---

[1] Bullard initially brought suit against the Internal Revenue Service ("IRS"), following which the Court substituted the United States as the proper defendant.

[2] The claim for a tax refund is not part of the Motion.

within the meaning of 26 U.S.C. § 6672(a).[3]  Because AMC failed to pay the taxes, the IRS assessed trust fund penalties against Bullard totaling $678,878.04 for the third quarter and $5,669.45 for the fourth quarter of 1996.

On October 28, 2003, the IRS sent a certified letter to Bullard, return receipt requested, at his last known address of 5001 Muskogee Street, College Park, MD 20740,[4] asserting his liability for the taxes under the statute and notifying him of his right to a collection due process hearing ("CDP hearing").[5]  The October 28, 2003 letter ("CDP notice"), as it happens, was returned to the IRS as "undeliverable," confirming Bullard's claim that he never received it.  According to Bullard, as of October 28, 2003, he was no longer living at the Muskogee Street address and had moved to 4819 Quimby Avenue, Beltsville, Maryland 20707.[6]  Bullard admits, however, that he did not notify the IRS of his change in address prior to October 28, 2003 when the CDP notice was sent.  His tax returns from both 2002 and 2001, which would have been the most straightforward means of

---

[3] "Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over." *Id.*

[4] This address had been provided to the IRS by Bullard in his last-filed tax return at that time, which appears to have been his 2000 tax return.

[5] "No levy may be made on any property or right to property of any person unless the Secretary has notified such person in writing of their right to a hearing under this section before such levy is made." *Id.* § 6330(a).  If such a hearing is requested in timely fashion, the levy is stayed until the CDP is held and during the pendency of any appeals. *Id.* § 6330(e).

[6] Bullard explains that he moved several times between 1997 and 2004.  From 1997-2001, he lived at 5023 Ontario Avenue in College Park, Maryland.  From 1998-2001, he lived at 5001 Muskogee Street in College Park.  From 2001-2004, he lived at 4819 Quimby Avenue in Beltsville, Maryland and then moved in with his mother at 15609 Birch Run Terrace in Laurel Maryland, where he currently resides.  Bullard claims to have filed a change of address with the U.S. Postal Service as to each move.

2

notifying the IRS of a change in address, were not filed until September 2004, almost 11 months after the IRS issued the CDP notice.[7]  Nor had Bullard completed a "Change of Address Form," Form 8822, with the IRS prior to that time.

It appears that the IRS took no further steps to provide the CDP notice to Bullard, such as mailing it to his place of employment.  The IRS explains that it had received conflicting address information from third parties.  Specifically, in June 2003, Bank of America had reported that Bullard's address was 15609 Birch Run Terrace, Laurel, MD 20707.  But, a month prior, Bullard's W-2 form had indicated that his address was 4819 Quimby Avenue, Beltsville, MD 20705.  Because of this conflicting information, the IRS relied solely on Bullard's own submission of his address from his last-filed tax returns.

Despite having received back its CDP notice marked "undeliverable," on December 12, 2003, the IRS, having located Bullard's employment address as "c/o Marshalls of Ma, Inc., 770 Cochituate Road, Framingham, MA 01701," imposed the levy on Bullard's wages.  Bullard indicates that he first received notice of the levy from his employer some time just before Christmas, 2003.  By then, of course, any chance for a pre-levy hearing under 26 U.S.C. § 6330 had come and gone.[8]

---

[7] The late-filed 2002 and 2001 tax returns list 15609 Birch Run Terrace, Laurel, MD 20707 as Bullard's address.

[8] On March 28, 2005, Bullard submitted an IRS Form 843 entitled "Claim for Refund and Request for Abatement."  Attached to the form, under the heading "Conclusion" is written "Taxpayer's Power of Attorney is enclosed along with Claim Form 12153, Request for A Collection Due Process Hearing," presumably referring to a pre-levy CDP hearing, which was deemed untimely.

The Court notes, however, that under 26 C.F.R. § 301.6330-1(i)(1), Bullard may have been entitled to an "equivalent hearing:"

A taxpayer who fails to make a timely request for a CDP hearing is not entitled to a CDP

3

This of course did not preclude Bullard from for a tax refund, which in fact he did do.  After the IRS denied his claim on March 14, 2006, Bullard participated in an Appeals hearing, but the Appeal was denied.  Shortly thereafter, Bullard filed the present suit.  He has maintained from the outset that although he does not contest his personal tax liabilities, he was only an employee of AMC and as such should not be held responsible for the trust fund penalties.

**II.**

The Court considers the motion of the United States to dismiss Bullard's claim for a permanent injunction.  The Court previously issued a Memorandum Opinion denying Bullard's request for a preliminary injunction and stay of the levy.  The analysis regarding his claim for a permanent injunction essentially mirrors the Court's analysis regarding his request for a preliminary injunction.

The United States is entitled to sovereign immunity unless it consents to be sued.  *See United*

---

hearing.  Such a taxpayer may nevertheless request an administrative hearing with Appeals, which is referred to herein as an "equivalent hearing."  The equivalent hearing will be held by Appeals and generally will follow Appeals procedures for a CDP hearing.

In equivalent hearings, "Appeals will consider the same issues that it would have considered at a CDP hearing on the same matter."  *Id*. § 301.6330-1(i), A-12.  Most relevant to the present case, however, unlike in the CDP context, when an equivalent hearing is requested, there is no requirement that a levy by suspended: "Collection action is not required to be suspended.  Accordingly, the decision to take collection action during the pendency of an equivalent hearing will be determined on a case-by-case basis."  *Id.* § 301.6330-1(i), A-14.

Interestingly, Bullard's Form 843 Claim for Refund, filed in March 2005, listed the 5001 Muskogee Street address that Bullard allegedly moved from by 2001.  Bullard explains that the form was prepared by his attorney and signed by him before the address was mistakenly filled in by someone else, possibly his attorney's secretary.  Nonetheless, his signature appears on the form just beneath an attestation to the truthfulness of the information under penalties of perjury.  At a minimum, Bullard's explanation shows that even his own attorney was confused about Bullard's place of residence.

*States v. Dalm*, 494 U.S. 596, 608 (1990). Not only is such consent lacking here, but an outright prohibition from suit obtains: The Anti-Injunction Act deprives the Court of jurisdiction to enjoin the ability of the IRS to assess and collect taxes. *See* 26 U.S.C. § 7421 ("Anti-Injunction Act"). Specifically, the Act provides that, aside from specifically enumerated exceptions, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." *Id.* § 7421(a). This language aims to "withdraw jurisdiction from the state and federal courts to entertain suits seeking injunctions prohibiting the collection of federal taxes." *Enochs v. Williams Packing & Navigation Co., Inc.*, 370 U.S. 1, 5 (1962).

The Court previously addressed why none of the statutory exceptions to the Anti-Injunction Act applied to Bullard's request for a preliminary injunction. The Court will not repeat its analysis as to why the exceptions of 26 U.S.C. § 6331(i) and § 6672(c)(1) are similarly inapplicable to his claim for a permanent injunction, since the inapplicability of those exceptions has not been or cannot be legitimately contested by Bullard.

However, the exception of 26 U.S.C. § 6330(e)(1) merits further comment. Under that section, if a taxpayer requests a CDP hearing, "the levy actions which are the subject of the requested hearing . . . shall be suspended for the period during which such hearing, and appeals therein, are pending." *Id.* Though it is clear that Bullard never appropriately requested or received a CDP Hearing, the Court expressed concern at the oral argument on the present motion that the IRS may have failed in its obligation to notify Bullard of his CDP rights and therefore might be estopped from arguing Bullard's failure to request a CDP hearing. Specifically, it appeared to the Court that at the time the CDP notice was returned "undeliverable," the IRS could have at least reached Bullard

5

at his place of employment. In that event, Bullard might arguably be entitled to a retroactive stay of the levy and credit for all of the interest that accrued since the time that Bullard was prevented from requesting a CDP hearing. The Court, however, finds no legal error in the IRS' failure to notify Bullard at his employment address.

In light of the numerous valid addresses made available to it,[9] the obligations of the IRS to provide notice of CDP rights to the taxpayer are clear. The IRS needed only serve Bullard at his last known address; actual receipt of the notice by him was not necessary.

Thus, the CDP statute allows the IRS to provide the CDP notice in person, by leaving a copy of the notice at the taxpayer's dwelling or usual place of business, or by sending the notice via certified mail, return receipt requested, to the taxpayer's last known address.[10] 26 U.S.C. § 6330(a)(2). Notably, the statute employs the disjunctive term "or," indicating that only one method of service is required. The statute in no way requires that if service via one means fails, another means must be pursued. The Department of Treasury regulations governing CDP hearings make clear that actual receipt is not necessary for the notice to be valid:

> Q-A9. What are the consequences if the taxpayer does not receive or accept the notification which was properly left at the taxpayer's dwelling or usual place of business, or properly sent by certified or registered mail, return receipt requested, to the taxpayer's last known address?

---

[9] As Bullard explains, the address provided on his Bank of America account (Birch Run Terrace) was his mother's address and was his emergency contact. Any notice that was sent to the Birch Run Terrace address would have been given to him by his mother. The address provided on his W-2 form (Quimby Avenue) was his actual address in October of 2003. Any notice sent to the Quimby Avenue address would have been received directly by Bullard.

[10] A taxpayer's "last known address" is "the address that appears on the taxpayer's most recently filed return . . . unless the Internal Revenue Service (IRS) is given clear and concise notification of a different address." 26 C.F.R. § 301.6212-2(a).

> A-A9. Notification properly sent to the taxpayer's last known address or left at the taxpayer's dwelling or usual place of business is sufficient to start the 30-day period within which the taxpayer may request a CDP hearing. . . **Actual receipt is not a prerequisite to the validity of the CDP notice**.

26 C.F.R. 301.6330-1 (emphasis added).

Cases in several contexts hold that actual receipt of notices from the IRS is unnecessary. *See e.g., Tadros v. Comm'r of Internal Revenue*, 763 F.2d 89, 91 (2d Cir. 1985) ("if it is mailed to the taxpayer's last known address it is adequate"). Indeed, even after notices have been returned "undeliverable," courts have held that so long as the deficiency notice was appropriately mailed in the first place, there is no requirement that it be received: the focus "is on the information available to the IRS *at the time it issued the notice of deficiency*. . . Nothing in the statute suggests that the IRS is obligated to take additional steps to effectuate delivery if the notice is returned." *Pomeroy v. United States,* 864 F.2d 1191, 1195 (5th Cir. 1989) (citations omitted). *See also Eschweiler v. United States*, 946 F.2d 45, 49 (7th Cir. 1991) ("Moreover, the fact that the IRS did not take steps to ascertain Eschweiler's address after the notice of deficiency was returned to the IRS unclaimed does not bolster Eschweiler's argument that the IRS failed to exercise reasonable diligence in obtaining his address"). Practical considerations justify this limitation on the IRS' obligations: "Although the mailing of notice to the taxpayer's last known address may not always provide actual notice to the taxpayer, this allowance for constructive notice protects the IRS from the overwhelming administrative burden of ascertaining each taxpayer's exact address at any given time." *Tadros,* 763 F.2d at 92.

In the CDP context and elsewhere, the IRS must only exercise "reasonable diligence" to ascertain the taxpayer's last known address. *Powell v. United States*, 958 F.2d 53, 55 (4th Cir. 1992). The IRS met this minimum burden by sending the CDP notice to the most recent address

7

provided by Bullard. Unfortunately for Bullard, the onus was upon him to notify the IRS of any changes in address. Whatever the IRS might have done, the Court cannot find that its failure to take further action constitutes unreasonableness under the law. Inasmuch as the IRS met its statutory requirements of service, the CDP exception to the Anti-Injunction Act cannot be successfully invoked. In sum, Bullard is not entitled to a retroactive stay of the levy under this exception to the Anti-Injunction Act.[11]

Accordingly, the United States' Motion to Dismiss is **GRANTED** as to Bullard's claim for a permanent injunction.

### III.

The Court turns to Bullard's claim for monetary damages. Though the Complaint does not specify by what authority Bullard makes his claim for such damages, the Court assumes that Bullard intends to assert a claim under 26 U.S.C. § 7433 for unauthorized tax collection activity, which does provide a cause of action for civil damages against the Internal Revenue Service.[12] However, while the U.S. has waived immunity against suits based on such claims, § 7433 also mandates that the

---

[11] The limited common law exceptions to the Anti-Injunction Act are also inapplicable. This case is not one in which the taxpayer has no "legal way to challenge the validity of the tax." *See South Carolina v. Regan*, 465 U.S. 367, 373 (1984). Indeed, as he has in fact done, Bullard may sue for a tax refund or for damages, if he has satisfied the prerequisites for bringing a damages suit. Nor is this a case where "it is clear that under no circumstances could the Government ultimately prevail." *Enochs*, 370 U.S. at 7. The trust fund penalties assessed against Bullard are by law presumptively valid. *See, e.g., Welch v. Helvering,* 290 U.S. 111, 115 (1933). Finally, Bullard's alleged financial hardship, in and of itself, is not sufficient to justify an injunction. *See U.S. v. Am. Friends Serv. Comm.*, 419 U.S. 7, 11 (1974) (holding that allegations of irreparable harm were insufficient for injunction).

[12] "If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregards any provision of this title . . . such taxpayer may bring a civil action for damages against the United States. . . ." 26 U.S.C. § 7433.

8

plaintiff exhaust administrative remedies before filing a damages action: "[A] judgment for damages shall not be awarded . . . unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service." *Id.* § 7433(d)(1). The regulations provide that in order to meet the exhaustion requirement, the taxpayer must send an administrative claim to the district director which includes: (i) the name, address, phone numbers and taxpayer ID number for the claimant, (ii) the grounds for the claim, (iii) a description of the injuries sustained, (iv) the dollar amount of past and foreseeable future damage and (v) the taxpayer's signature. 26 C.F.R. § 301.7433-1(e).

Though Bullard alleges in his papers that he has pursued every administrative remedy available to him, it is clear to the Court that he has not complied with the specific administrative procedures set forth under the regulations in order to preserve a claim for damages. While he did take a number of steps seeking primarily to stop the levy, his failure to follow the specific procedures for pursuing a damage claim deprives this Court of jurisdiction to hear it. *See, e.g., Rodriguez v. Aiello*, No. Civ. A. AW-97-79, 1997 WL 440747, at * 1 (D. Md. April 7, 1997) (dismissing damages claim for lack of jurisdiction based on failure to allege exhaustion); *McGuirl v. United States*, 360 F. Supp. 2d 125, 128 (D.D.C. 2004) (dismissing damages claim for lack of jurisdiction where plaintiff failed to exhaust remedies).

Accordingly, the United States' Motion to Dismiss is **GRANTED** as to Bullard's claim for damages under § 7433.

**IV.**

For the foregoing reasons, Defendant's Motion to Dismiss [Paper No. 14] is **GRANTED**. Bullard's claim for a tax refund and the United States' Counterclaims and Third-Party Complaint will go forward. A separate Order will be **ENTERED**.

/s/
**PETER J. MESSITTE**

**February 26, 2007**                **UNITED STATES DISTRICT JUDGE**